IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br>vs<br>**1) JOSIAS PAYANO-MANZUETA**<br>2) FRANCIS JIMENEZ-PAULINO<br>Defendants | CRIMINAL 13-0184-01CCC |

**ORDER**

During the first day of trial, October 25, 2016, the United States presented in its case in chief a 4-wheel roller black "TCL/Tavelers Club" suitcase with a cardboard evidence tag of the Drug Enforcement Administration (DEA) attached to the handle with the following written notations:

> Case No. 65-13-0077
> Exhibit N-1
> Acquired by TFO[1] Héctor Tapia
> Location Carolina, P.R.
> Date 3/11/2013
> Sealed by SA Lynelle Berrios (3/13/13)
> Witness by TFO Rosendo Guerra.

The suitcase so described was admitted without objection as Government Exhibit 1. During cross-examination the government's second witness, Customs and Borders Patrol Protection Supervisor Javier A. Barreto, defense counsel David Román submitted, without objection, a paper copy of a photo of a black suitcase that was provided to defendant and marked as Defendant's Exhibit A. This witness had testified on cross-examination that he was not present when the substances admitted as Exhibits 3A and 3B were

---

[1]TFO stands for Task Force Officer.

CRIMINAL 13-0184-01CCC            2

taken out of a suitcase the day when defendant Josías Payano-Manzueta (Payano) was arrested at checkpoint 5 of the JetBlue terminal in the San Juan Luis Muñoz Marín International Airport.

The first witness for the government, Transportation Security Administration (TSA) officer Daniel Barbosa, testified that he was operating the X-ray machine used to screen bags at the checkpoint when he observed defendant Payano place a bag that contained 6 suspected masses inside, prompting a secondary inspection. TSA Agent Barbosa testified that the inspection officers went through the contents of the X-rayed suitcase that had been placed by defendant and that, beside the bundles, there were shoes and clothes. During the entire testimony of this first witness, the only suitcase to which reference was made was Trial Exhibit 1, the 4-wheel roller black "TCL/Travelers Club" suitcase that he testified he had seen while operating the X-ray machine at the checkpoint and which was sent for secondary inspection. U.S. Customs and Border Officer Barreto, the second and last witness for the government, testified that he assisted the TSA checkpoint that day and that defendant Payano was standing at the secondary inspection area where he was detained because his bag was "like containing some packages, 6 packages." He observed defendant Payano standing by the inspection table, a black suitcase on the left side and a TSA tray on the right side with 6 packages. He testified that Trial Exhibit 1 for the government was "the suitcase on the left side;" that he was there with one of his K-9 officers and the dog alerted to the odor of narcotics; and after that "we transported Payano, the suitcase and the packages to the Customs enclave." He stated that he took the defendant to the Customs area where the substance was field tested, testing positive to cocaine. He also testified that "we had his documents that

CRIMINAL 13-0184-01CCC            3

were with him, the boarding pass and the suitcase." He identified Exhibit 3A for the government as 3 bricks that tested positive to cocaine and Exhibit 3B as 3 other bricks that also tested positive to cocaine during a field test done in his presence.

During cross-examination, officer Barbosa testified that he was present at the secondary inspection. When shown Exhibit 1 for the government he described it as the suitcase taken from defendant and again said that, on the table, the bag was on the left side, Payano was standing in the middle and on the right side there was a tray that TSA used to inspect. He testified that TSA had informed that they had taken Exhibits 3A and 3B out of the suitcase, but that he was not present when they were moved from the suitcase to the tray. It is at this point in the cross-examination when, for the first time, a paper copy of a photo of a black suitcase was shown by defense attorney Román to the second witness. The witness stated that he did not take that photo and was unable to give information regarding it. This photo had been marked as Exhibit A for defendant without objection after defense attorney proffered it was his client's suitcase.

It is at this point in time that the Court hears the parties, outside the presence of the jury, on differences between Exhibit 1 and Exhibit A. The Court then compared the paper copy of the photo of the black suitcase marked as Defendant's Exhibit A to the black suitcase in evidence marked as government's Exhibit 1. It should be noted that the black suitcase in Exhibit A for defendant is the same one that appears on a table next to a red suitcase in a photo previously provided in discovery to defendant by the United States, which was marked as Court Exhibit I for purposes of the evidentiary issues that arose at that time. Defendant argued that the suitcase in the photo marked as

CRIMINAL 13-0184-01CCC              4

Exhibit A was different from the suitcase marked as Government's Trial Exhibit 1. Undoubtedly, and the Court so found at the time, these were two different suitcases. The issue remained whether the suitcase seized and identified by its government trial witnesses as the suitcase that defendant Payano brought to the terminal which was seized at the time of his arrest at the secondary inspection area was Exhibit 1. The United States was granted a one-day continuance to verify the information. On October 26, 2016, it filed its Motion in Response to Evidentiary Issue (docket entry 205) and confronted defendant's claim that the jury should know that the Government's Trial Exhibit 1 and defendant's Exhibit A are different suitcases. Its response contains detailed information regarding the suitcase depicted in defendant's Exhibit A and the suitcase admitted as Government's Exhibit 1 that had been shown to the two government witnesses and the jury. Among the documents submitted is the DEA Form 7a prepared on March 11, 2013 that describes the following articles taken into DEA custody on March 11, 2013, to wit:

> N-1 One Black "TCL" suitcase which contained narcotics and was in passenger Josias PAYANO's possession at JetBlue checkpoint.
>
> N-2 One Red "Forecast" suitcase which contained narcotics and registered to JetBlue Airlines passenger Francis JIMENEZ-Paulino bearing tag #5279669514.

The black TCL suitcase described in the DEA Form 7a is the suitcase admitted as Exhibit 1 for the government, which has a DEA evidence label in which it is identified as Exhibit N-1. All the information that appears in the DEA evidence label on the black suitcase admitted as Government's Trial Exhibit 1 matches that provided in the "Section 16 Remarks" of DEA Form 7a, including the transfer of Exhibit N-1 to the DEA Task Force agents whose names appear on the DEA evidence label attached to the black suitcase admitted as Government's Trial Exhibit 1. Docket entry 205-5, the

CRIMINAL 13-0184-01CCC                5

DEA 7a Form, describes the black "TCL" suitcase as the one that defendant Payano possessed at the JetBlue checkpoint with narcotics and also describes a "red Forecast" suitcase with narcotics registered to co-defendant Francis Jimenez-Paulino, the co-defendant who is not on trial since he changed his plea. There is a second suitcase described in docket entry 205-2, as a black Concourse suitcase that contained clothes, personal items and money, which the documents reflect was returned to Jiménez-Paulino's family as non-drug property seized from him.

In his Opposition (docket entry 208), defendant Payano also seeks a mistrial. In support thereof, defendant submits"Opposition Exhibits 1, 2 and 3."[2] Movant incorrectly describes his Opposition Exhibit 2 as a "group of 4 photographs of **a** Black bag . . . produced by the government to the defense in pretrial discovery." (Emphasis ours.) He then proffers that "when giving defendant Payano the images of the cocaine-laden bags, the only photos of a black bag was that of a bag the government now says does not belong to him . . . yet the government never gave him a photograph of a bag (Government Trial Exhibit 1) which they now say is his." Response, p. 3. Defendant then avers at page 4 of his Response in Opposition that the "government sandbagged the defense by bringing to trial a black bag that is not the one depicted in the discovery photos . . . it is also clear that Government Trial Exhibit 1 is not the bag that is shown on the photos of the black bag with the cocaine given to the defense." He then argues that "the black carry-on bag with the cocaine shown in the discovery photos (Opposition Exhibit 2) is what the defense prepared to defend against . . . it based its strategy on the

---

[2]Opposition Exhibit 4 are photos taken by movant of Government's trial Exhibit 1 in the well of the court on the first day of trial, while the other opposition exhibits were all disclosed in discovery.

CRIMINAL 13-0184-01CCC              6

government's representation that this was the bag, not the much larger non-carry-on bag it brought to court." Id.

Defendant's core argument is based on docket entry 209-2, attached to docket entry 209, which is his Motion Submitting the Exhibits in support of the request for mistrial. The four photos identified as "Opposition Exhibit 2" in the table at page 2 of his Opposition, all four filed as docket entry 209-2 are not, as represented by movant, photographs of "**a** black bag" disclosed in discovery. These are photographs of **two** different black bags. For purposes of clarity, the "Opposition Exhibit 2" submitted as 4 photos, filed as docket entry 209-2, will be renumbered by the Court as follows: Attachments I and II to this Order which depict one same black open suitcase with plastic bags, and Attachment III and IV to this Order depict a different black suitcase, one photo depicting that suitcase with clothes and the other photo depicting that same suitcase without contents. At the outset, a comparison of the black suitcase depicted in Attachments III and IV, with Government's Trial Exhibit 1 under court custody, compels the conclusion that the suitcase there depicted is not the one admitted as Trial Exhibit 1 and represented by the government, by way of the testimony of its trial witnesses, that was the one possessed by defendant Payano and placed by him for X-ray inspection at the TSA security checkpoint. Trial Exhibit 1 for the government has four wheels, while the suitcase in Attachments III and IV has only two wheels. The latter has two bumpers in the bottom area of the two wheels which Government's Trial Exhibit 1 does not have. These physical characteristics clearly distinguish one from the other. Accordingly, the defendant's reference to these **two** different black suitcases as "**a**" black bag is misleading.

CRIMINAL 13-0184-01CCC         7

We now turn to the black bag that is depicted in Attachments I and II. These photos do not support the representations made by movant in his Request for Mistrial, specifically that "Government Trial Exhibit 1 is not the bag that is shown in the photos of the black bag with the cocaine given to the defense; Opposition Exhibit 2." Response in Opposition (docket entry 208), p. 4. The black open suitcase depicted in Attachments I and II provided to defendant in discovery was compared by the Court with the suitcase admitted at trial as Trial Exhibit 1. The Court finds that the suitcase depicted in the discovery photos submitted as Attachments I and II is without doubt the same suitcase admitted as Government's Trial Exhibit I. It also concludes that defendant's argument that the government did not provide him in discovery photos of Trial Exhibit 1 misdirects the inquiry. The comparison of Trial Exhibit 1 with the photos disclosed in discovery, marked as Attachments I and II, reveals the following identical features:

(1)   The inner lining of the hinge that runs from one end to the other of the outer zipper of the open suitcase with the word "CLUB" printed lengthwise in Attachments I and II corresponds exactly to the inner lining of the hinge of the suitcase admitted as Trial Exhibit 1. The comparison of Trial Exhibit 1, opened/content exposed, with the photos disclosed in discovery, marked as Attachments I and II to this Order, shows the same inner lining of the hinge printed with the word "CLUB."

(2)   The brand that appears on the metal plaque of the suitcase admitted as Trial Exhibit 1 for the government is "TCL Travelers **Club**." (emphasis ours).

CRIMINAL 13-0184-01CCC                    8

(3)   The items consisting of black clothing with white stitching and acqua blue clothing depicted in Attachments I and II are both part of the contents of Trial Exhibit 1.

(4)   The metal snap depicted on the bottom left portion of the photo marked as Attachment II is the same metal snap found in that same area of the suitcase marked as Trial Exhibit 1.

(5)   Both Attachments I and II show a black brand label affixed to the inner mesh compartment of the top shell of the suitcase.  The printing on the label on Attachments I and II cannot be read on the photos, but has the same color and is placed in the exact location as the label on Trial Exhibit 1.

(6)   The open suitcase depicted in Attachment II reflects below the zipperhead and near the wheel area a metal bolt which is identical and in the same position as that seen in the Trial Exhibit 1 suitcase, opened.

The four photos presented by defendant as his "Opposition Exhibit 2" of docket entry 209 defeat defendant's contention that he was not given discovery photos of the Government's Trial Exhibit 1.  His "Opposition Exhibit 2" photos now renumbered as Attachments I and II of this Order are the discovery photos of Trial Exhibit 1 that he received in discovery.  The Trial Exhibit 1 discovery photos were received by defendant together with photos of other suitcases involved in the investigation of this case, to wit: two suitcases belonging to co-defendant Jiménez-Paulino, initially indicted with Payano in a conspiracy count.[3]  Defendant received during the pretrial discovery phase photos of all of the suitcases involved in the investigation and subsequent indictment, the two

---

[3] Just before the trial of defendant Payano, the government elected to dismiss all other charges against him and to try him only on Count One, charging possession with intent to distribute cocaine, that involved only Trial Exhibit 1, the same black suitcase depicted in Attachments I and II of this Order.

CRIMINAL 13-0184-01CCC                9

belonging to Jimenez-Paulino, a black suitcase and a red suitcase, and the one belonging to him, the black suitcase admitted, without objection, as Trial Exhibit I.

     The argument that Exhibit 1 is bigger than a carry-on bag is irrelevant to the evidentiary issues before the Court.  Mr. Payano is charged with possessing cocaine with the intent to distribute.  The Stipulation filed on October 24, 2016 by the United States and the defendant Josias Payano-Manzueto (docket entry 202) which was read to the jury on the first day of trial, stipulates in its second paragraph "[t]hat Senior Forensic Chemist José Conde received 3431 grams, gross weight of block shaped packages seized on March 10, 2013 by law enforcement authorities from the carry on luggage of Josias Payano-Manzueto."  Based on the materials submitted by the United States in its Motion in Response to Evidentiary Issue filed on October 26, 2016 (docket entry 205), by defendant in his Opposition thereto and Request for Mistrial filed on October 27, 2016 (docket entry 208) and on its comparison of Trial Exhibit 1 with the photos marked as Attachments I and II, the Court FINDS that the carry-on luggage that defendant Payano possessed on the date of his arrest is Trial Exhibit 1 for the government and no other.  The photos of that trial exhibit were provided to defendant and his attorney in discovery.  Defendant has neither been misled nor prejudiced in the preparation of his defense.  The fact that, during trial, Exhibit A was briefly misrepresented to the undersigned to be defendant Payano's suitcase when in fact it was the black suitcase that belonged to co-defendant Jiménez-Paulino along with a red suitcase, does not  diminish in any manner the Court's analysis and its evidentiary ruling.  The confusion as to the identity of Exhibits 1 and A was created by the attorneys themselves.  Defendant's attorney never requested

CRIMINAL 13-0184-01CCC            10

the Court to physically inspect the black TCL suitcase before trial and the government's counsel, erroneously proffered at sidebar that the copy of the photo admitted as Exhibit A was defendant's bag.  There is no need to elevate this confusion to the level of an evidentiary argument that could exclude Trial Exhibit 1 for there is no basis to support its preclusion.  The bag seized from defendant Payano is the one admitted in evidence, without objection, as Government's Trial Exhibit 1.  His own "Opposition Exhibit 2" photos prove this.

For the reasons stated, the government's Motion in Response to Evidentiary Issue opposed by defendant, is NOTED.  Defendant's Exhibit A, erroneously submitted, given the discussion related to this Exhibit that is part of the ruling, is STRICKEN.  The jury will be instructed that this Exhibit is no longer before it.  The Request for Mistrial filed by defendant as docket entry 208 is DENIED.

SO ORDERED.

At San Juan, Puerto Rico, on October 28, 2016.

                                    S/CARMEN CONSUELO CEREZO
                                    United States District Judge